IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 3:24-cr-18 |
| | ) | Judge Stephanie L. Haines |
| RAFAEL RONDON-PEREZ, JR. | ) | |

## OPINION

Defendant Rafael Rondon-Perez, Jr. ("Defendant") was indicted on two drug charges on September 10, 2024 (ECF No. 1) and entered a not-guilty plea to those charges on October 8, 2024 (ECF No. 37). After a number of extensions were granted, on May 5, 2025, he filed the pending Motion to Suppress Affidavit in support of Search Warrant of Phone (ECF No. 53), which is the Motion now at issue before the Court.[1] He supplemented the Motion with an exhibit that was the Application for Search Warrant and Authorization for a White Q-link Wireless Phone (ECF No. 60). The Government responded to the Motion on August 18, 2025 (ECF No. 65) and the Court set a hearing date for September 24, 2025. At the conclusion of the suppression hearing Defendant moved to expand the scope of his Suppression Motion with a post-hearing Brief. The Court granted the motion and Defendant filed the Supplemental Brief in Support on October 24, 2025 (ECF No. 71). Defendant seeks to suppress the fruits of his unlawful detainment and arrest as well as contests the legality of the search warrant for his phone. The Government filed its Brief in Opposition (ECF No. 72). This matter is ripe for the Court's disposition. The Court will DENY Defendant's Motion to Suppress Evidence (ECF No. 53) for the reasons set forth below.

---

1 At the Pretrial Motions Hearing held on September 24, 2025, Defendant withdrew three other Pretrial Motions (ECF Nos. 54, 55, 56), leaving only the Motion to Suppress for the Court's consideration.

## I.    Background

Defendant and his co-defendant, Arnest Barker ("Barker"),[2] are charged in a two-count indictment filed on September 10, 2024 (ECF No. 1).  The indictment charges both defendants at Count One with conspiracy to possess with intent to distribute and distribute 40 grams or more of fentanyl contrary to the provisions of 21 U.S.C. § 846.  At Count 2, both defendants are charged with possession with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(vi).

On January 11, 2024, investigators conducted a controlled purchase of narcotics from Barker using a confidential source ("CS"). Transcript (TX), Doc. No. 69, at 7, ¶¶ 20-23.  Another controlled purchase of narcotics was scheduled with Barker on March 13, 2025, at which time investigators planned to arrest him with a felony arrest warrant that had been issued.  TX at 8-9.  During that transaction, which took place in a  high crime area, Barker informed the CS that he was waiting for the "purple stuff" from Philadelphia, which the CS believed to be a reference to fentanyl.  TX at 10.   The deal was eventually abandoned and Barker left and entered a house.  TX at 11, ¶¶ 12-19.

Investigators then prepared to obtain a warrant to enter the house and as they were doing so, Barker exited the house and got into a Chevy Impala that had pulled in front of the house.  TX at 10-11.   Officers then conducted a traffic stop of the Chevy Impala and immediately removed Barker from the car and arrested him.  TX at 12, ¶¶ 1-6.  Defendant and one other person were also removed from the car and detained.  TX at 14, ¶¶ 14-20.  Defendant was patted down for weapons which was standard procedure for officer safety.  TX at 15, ¶¶ 18-24.  The search of Defendant produced a large sum of cash and a cell phone.  TX at 44, ¶¶ 7-12.

---

2 On February 19, 2026, Barker pled guilty to a lesser-included offense at Count One.  Sentencing is scheduled for June 6, 2026.

When officers pulled Barker from the back seat, they saw a package under the front passenger side seat (where Defendant had been seated in the car) which the officers presumed was the expected purple fentanyl from Philadelphia. TX at 14, ¶¶ 2-10. Based on this information, the officers sought a search warrant for the car. Once the car was legally searched and the package was confirmed to be the purple fentanyl, Defendant was arrested. TX at 15, ¶ 10-14. About 3 days later Detective Thomas Keirn applied for, and obtained, a search warrant for Defendant's phone that was seized during the pat-down and/or seized incident to his later arrest.

On March 18, 2024, Detective Thomas E. Keirn made an Application for Search Warrant for Defendant's White Q-Link wireless Cellular Phone (ECF No. 60).

> Your Affiant is a Detective (retired) with the Richland Township Police Department (hereinafter "RPD"). I presently work with the Cambria Township Police as a narcotics investigator since retirement from RPD. I have over thirty (43) years of experience in law enforcement and am a charter member of the Cambria County Drug Task Force (hereinafter "CCDTF") for over 32 years. I am a Certified Deputized member of the Safe Street Federal Drug Task Force with full Federal Credentials as a Task Force Officer with the FBI. The Safe Streets Task Force ta[r]gets violent Crimes and Drug Enforcement investigations. My experience in particular has involved drug investigations and interdiction. I have received extensive training and have experience regarding identification of illegal controlled substances and the investigation of the methods used by Drug Traffickers. I have made thousands of arrests for violations of the Controlled Drug Device and Cosmetics Act 35 P.S. 780-101 et seq. I have been received as an expert regarding drug trafficking investigation and interdiction in the Court of Common Pleas of Cambria Court. I have testified in numerous drug cases in the U.S. District for the Western District of Pennsylvania in Johnstown and Pittsburgh Pennsylvania. I have received extensive training in Criminal Investigation as well as training in illicit drug trafficking Investigation from the PA District Attorney's Association, the Drug Enforcement Administration, the Bureau of Alcohol Tobacco and Firearms, and Municipal Police Officers Training and Education Commission, the Pennsylvania Narcotic officers Association, the U.S. Department of Justice, the Pennsylvania State Police, and the Federal Bureau of Investigation.

> On March 13, 2024, this AFFIANT along with other law enforcement from CCDTF and US Marshall Service, Pa. State Parole, and Office of Attorney General were attempting to serving [sic] a lawful arrest warrant (State Parole) on ARNEST BARKER at a residence 214 Charles Street in the City of Johnstown Cambria County Pa. While conducting surveillance on the residence the target of the

investigation was seen on the front porch of the residence. While observing BARKER on the front porch a gold/bronze colered [sic] Chevy sedan pull [sic] up near the residence the[n] BARKER got into the vehicle. A marked patrol unit with lights and siren made a stop on the vehicle on the next block. Once the vehicle was stopped all persons were detained and removed from the vehicle. The driver black male along with another black male front seat passenger were in the front seat. BARKER was located in the back seat directly behind the driver of the car. BARKER was taken out of the vehicle and placed on the ground advising him he was under arrest by this AFFIANT. Once BARKER was clear from the back seat area he was searched incident to arrest and found to be in possession of a large sum of money (US currency) along with several items of drugs and drug paraphernalia. These items were seized by this AFFIANT. This AFFIANT advised BARKER of his constitutional rights and he stated he understood. In the seizure during BARKERS [sic] arrest he was in possession of two cellular phones that he stated where [sic] his cell phones.

During the arrest process of ARNEST BARKER two other persons were detained in the vehicle stop. The driver, --, and right front seat passenger, RAFAEL RONDON-PEREZ were both from Philadelphia. There was a cellular phone that was seized from RONDON-PEREZ during the investigation that was identified as his phone which is a white Q-Link wireless cellular phone.

Your AFFIANT also executed a lawful search warrant on the vehicle, a gold/bronze Chevy Impala bearing Pa registration #LYD-4640 owned by the driver RANNELS. As a result of that search warrant a large quantity of purple FENTANYL (90 grams) was seized that was within reach and control of BARKER and the other occupants It is known by this AFFIANT that significant evidence likely exists in the white Q-Link Wireless phone in possession of RONDON-PEREZ, in relation to the purple FENTANYL and other drugs and cash found on BARKERS [sic] person at the time of his arrest. RONDON-PEREZ has been arrested for possession with intent to deliver the purple FENTANYL found under his seat in the search warrant.

Your AFFIANT now requests that a lawful search warrant be issued for the collection of evidence from the white Q-Link Cellular phone seized from RAFAEL RONDON-PEREZ during this investigation. At the time RONDON-PEREZ provided no phone number or any passcode for the Q-Link cellular phone seized. The Q-Link Wireless Cellular  phone is currently in evidence and secured at the CCDTF office at the Central Park Complex.

Due to the totality of the [c]ircumstances contained within the Affidavit of Probable Cause and the Application for Search Warrant, your AFFIANT now requests that a lawful search warrant be issued for the white Q-Link Wireless cell phone found on [Defendant] at the time of his detention and arrest. This request is to examine electronic media stored inside, relative to this ongoing investigation, that will further this investigation in regard to possession and distribution of illegal drugs.

ECF No. 60, pp. 3-4.

## II.    Legal Standard

The Fourth Amendment to the United States Constitution protects citizens from unreasonable governmental searches and seizures.  It provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  Probable cause "is not a high bar. It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act."  *Kaley v. United States*, 571 U.S. 320, 338 (2014) (alteration in original) (internal quotations omitted) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)).  Further, "a finding of 'probable cause' may rest upon evidence [that] is not legally competent in a criminal trial."  *United States v. Ventresca*, 380 U.S. 102, 107 (1965).

The government triggers the protections of the Fourth Amendment when it invades an area where a person has a "constitutionally protected reasonable expectation of privacy."  *New York v. Class*, 475 U.S. 106, 112 (1986) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).  Under the Fourth Amendment, persons have a protected reasonable expectation of privacy to the content of their cell phones, and thus the Supreme Court has held that police must get a warrant before searching a cell phone seized incident to an arrest.  *See Riley v. California*, 573 U.S. 373, 403 (2014) ("Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is ... simple - get a warrant."); *see also id. at 401* ("Our

5

holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest.").

With some exceptions, evidence seized in violation of a defendant's Fourth Amendment rights may not be admitted in a criminal prosecution against a defendant. *See generally Mapp v. Ohio*, 367 U.S. 643 (1961). In approving or denying an application for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In determining the sufficiency of an officer's affidavit, a magistrate judge must consider whether the "totality-of-the-circumstances" set forth in the affidavit establish probable cause. *Id*. at 230-31. An exact formula for what adds up to probable cause escapes precise and all-encompassing definition. Instead, the Supreme Court has held that probable cause is a "fluid concept" that "turn[s] on the assessment of probabilities in particular factual contexts". *Id*. at 232.

The legal standard for a district judge reviewing the issuance of a search warrant is highly deferential. As the Supreme Court has explained, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for… conclud[ing]' that probable cause existed." *Id*. at 238-39. A reviewing court may not review *de novo* an issuing judge's probable cause determination. *See id*. at 236. In evaluating the issuance of a search warrant, the law is well settled that a reviewing court is "confined in its decision to whether the information within the four corners of the affidavit established probable cause to issue the search warrant." *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000). "'The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner.'" *Id*. (quoting *United States v. Conley*, 4 F.3d 1200, 1206

(3d Cir. 1993)). "[S]tatements in an affidavit may not be read in isolation—the affidavit must be read as a whole." *Id.* at 1208 (quoting *United States v. Brown*, 3 F.3d 673, 678 n. 5 (3d Cir.1993)). "If a substantial basis exists to support the magistrate [judge's] probable cause finding, [a reviewing court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). Further, as a general rule, the burden of proof is on the defendant who seeks to suppress evidence. *See United States v. Acosta*, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992)(internal citations omitted).

**III.    Analysis**

Defendant asks this Court to suppress the fruits of Defendant's unlawful detainment of his person, because neither the detainment nor the pat-down were supported by reasonable suspicion. ECF No. 71, p. 8. In his Motion to Suppress Evidence (ECF No. 53), defendant asserts that at the point he was detained, there was no evidence linking him to any crime, ECF No. 53, p. 6, thus, officers could have no reasonable suspicion to be concerned for their safety requiring a pat-down. ECF No. 71, p. 8. Furthermore, Defendant argues that there was no probable cause to arrest Defendant and therefore there could be no search incident to arrest. ECF No. 53, p. 6. With no probable cause to arrest, any fruits of the subsequent search must be suppressed. ECF No. 53, p. 7. Defendant further contends that even if there were probable cause to arrest, the search incident to arrest was unlawful because Defendant could pose no danger once he was detained outside the vehicle. ECF No. 53, p. 7. Finally, Defendant argues the search warrant for the Q-Link Cell Phone was insufficient to establish probable cause because the officer's statement of a "fair probability that ... evidence of a crime will be found" was not sufficiently supported. ECF No. 53, p. 8.

The Government's Response (ECF No. 65) asserts there was probable cause to search the vehicle because of the smell of marijuana, but it also asserts that the search incident to arrest of Barker allowed them to seize narcotics from Barker and the observation of the package under the seat all supported probable cause to search the vehicle. ECF No. 65, pp. 5-6. This background, the Government asserts, is important for determining whether Defendant was properly detained, patted down, arrested, and his cell phone seized, and later searched pursuant to a warrant.

The Government contends that the odor of marijuana and the ongoing narcotics investigation provided "reasonable' suspicion to detain Defendant. Reasonable suspicion is the level of suspicion to justify a *Terry* stop. It is less rigorous than "probable cause". ECF No. 65, pp. 7-8. But Defendant claims there was no justifiable reason for a *Terry* stop. ECF No. 53, p. 7. There was no reason to suggest that Defendant posed a risk to the officers. The Government asserts that the officers properly detained the defendant to continue the investigation, as Defendant was a suspect based on his presence in the vehicle.

The Government admits that it can be argued that investigators seized Defendant's phone prematurely. ECF No. 65, p. 8. Nevertheless, the Government asserts that the officers would have eventually seized the phone because they would have had probable cause to search Defendant following his arrest for the possession of the narcotics seized from the vehicle. ECF No. 65, p. 8 ("Inevitable Discovery"). "The inevitable discovery doctrine should be applied when the 'exclusion of evidence that would inevitably have been discovered would also put the government in a worse position because the police would have obtained that evidence if no misconduct had taken place.'" ECF No. 65, p. 8 (citing *Nix v. Williams*, 467 U.S. 431, 443-444 (1984)).

Defendant's Post-Hearing Brief (ECF No. 71) argues there was a lack of probable cause at all points from Defendant's detention to the warrant. He states there was no basis for detention or

pat-down because there could be no reasonable suspicion of his involvement in illegal activity. Thus, the seizure of the phone and money was a violation of his Fourth Amendment rights. There was no substantive link between Defendant and the purple fentanyl package so that his arrest based on that package, and any search classified as a search incident to arrest is also illegal. Finally, he states that the warrant to search Defendant's phone is not supported by probable cause.

The Government retorts (ECF No. 72) that given the totality of the circumstances, reasonable suspicion for a pat-down was supported and probable cause existed for Defendant's arrest and for the search warrant of the phone given his presence in the vehicle and as associate of Barker's. The totality of the circumstances includes the controlled buy and felony arrest warrant out for Barker. Officers knew Barker to be dealing drugs and were expecting a delivery of "purple fentanyl" from Philadelphia. After arresting Barker, they found money and drugs on his body. The car smelled of marijuana. They spotted a package under Defendant's seat likely to be purple fentanyl. The lawful search of the car proved to find fentanyl. The Court finds that the totality of the circumstances justified Defendant's detention, pat-down, arrest, and phone seizure.

**A. The Search Warrant Is Amply Supported by Probable Cause.**

Judges must issue warrants only based on probable cause. In determining whether probable cause exists, the magistrate judge who issues the warrant must consider the "totality-of-the-circumstances" and make a "practical, common-sense decision." *Gates*, 462 U.S. at 238. "When faced with a challenge to a magistrate's probable cause determination, a reviewing court must remember that its role is limited." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). The reviewing court must conduct "a deferential review of the initial probable cause determination made by the magistrate judge." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). "Of course, such deference 'does not mean that reviewing courts should simply rubber stamp a

magistrate's conclusions.'" *Jones*, 994 F.2d at 1055 (quoting *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983)). But the deference does mean that "doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n.10 (quoting *Ventresca*, 380 U.S. at 109).

In sum, "[t]he role of a reviewing court is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" *Stearn*, 597 F.3d at 554 (quoting *Gates*, 462 U.S. at 238–39). Pursuant to this standard, the reviewing court must limit its consideration to the facts in front of the magistrate judge—i.e., the four corners of the warrant application and affidavit. Therefore, here, the question is whether the warrant application and affidavit provided the magistrate judge with a substantial basis to find probable cause, in regard to the cell phone search warrant.

The Affidavit (ECF No. 60) signed by Detective Thomas Keirn of the Cambria County Task Force supported the search warrant. It provided Detective Keirn's extensive experience in drug enforcement with 43 years in law enforcement and his being a charter member of the Cambria County Drug Task Force for over 32 years. It also provided that Detective Keirn executed lawful searches on the individuals and the vehicle and provided the following support for a search warrant for Defendant's Q-Link wireless phone: "It is known by the AFFIANT that significant evidence likely exists in the white Q-Link Wireless phone in possession of RONDON-PEREZ, in relation to the purple FENTANYL and other drugs and cash found on BARKER'S person at the time of his arrest." ECF No. 60, p. 4, ¶ 3. He further states, "Due to the totality of the [c]ircumstances contained within the Affidavit of Probable Cause and the Application for Search Warrant, your AFFIANT now requests that a lawful search warrant be issued for the white Q-Link Wireless cell phone found on RAFAEL RONDON-PEREZ…" ECF No. 60, p. 4, ¶ 4.

As the Court states above, the totality of the circumstances described in the search warrant's application, supports probable cause for the search for the white Q-Link phone as Detective Kiern's Affidavit stated. Therefore, this Court finds that Magistrate Judge Pesto had a substantial basis to find probable cause to support the search warrant for the phone.

**B. Even if the Search Warrant was Invalid, the Good Faith Exception Would Apply.**

Finally, even if the search warrant in this case was invalid, the Court nevertheless would find that the evidence seized under that warrant should not be suppressed because the good-faith exception would apply.

When the government seeks to admit evidence collected under an illegal search or seizure, the judicially created doctrine known as the exclusionary rule at times suppresses that evidence and makes it unavailable at trial in order to deter Fourth Amendment violations. *See Herring v. United States*, 555 U.S. 135, 139-40 (2009). A warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. *See United States v. Leon*, 468 U.S. 897, 922 (1984)(internal citations omitted). Under the good-faith exception to the exclusionary rule, suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority," even though no probable cause to search exists. *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002) (quoting *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1999)).

"Application of the exclusionary rule is instead limited to those 'unusual cases' in which it may achieve its objective: to appreciably deter governmental violations of the Fourth Amendment." *United States v. Katzin*, 769 F.3d 163, 170 (3d Cir. 2014); *United States v. Leon*, 468 U.S. at 909, 918 (1984). Where the particular facts of a case indicate that law enforcement officers "act[ed] with an objectively 'reasonable good-faith belief that their conduct [was] lawful,

11

or when their conduct involve[d] only simple, 'isolated' negligence," there is no illicit conduct to deter. *Katzin,* 769 F.3d. at 171 (quoting *Leon*, 468 U.S. at 909). Alternatively, where law enforcement conduct is "deliberate, reckless, or grossly negligent" or involves "recurring or systemic negligence," deterrence holds greater value and often outweighs the associated costs. *Davis v. United States*, 564 U.S. 229, 238 (2011) (quoting *Herring v. United States*, 555 U.S. at 144 (2009)).

"Put differently, exclusion is appropriate only where law enforcement conduct is both 'sufficiently deliberate' that deterrence is effective and 'sufficiently culpable' that deterrence outweighs the costs of suppression." *Katzin*, 769 F.3d at 171; *Herring*, 555 U.S. at 144. Thus, determining whether the good-faith exception applies requires courts to answer the "objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Herring*, 555 U.S. at 145 (quoting *Leon*, 468 U.S. at 922 n. 23).

The Third Circuit has identified four situations in which an officer's reliance on a warrant does not implicate this good-faith exception: (1) where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) where the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *See United States v. May*, 87 F. App'x 223, 226 (3d Cir. 2003)(citing *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)).

As can been seen *supra*, Detective Kiern's affidavit contains a detailed summary of the facts, and the bases upon which he believed probable cause existed for the subsequent search of

the phone.  The Affidavit sets forth sufficient indicia of probable cause and was not facially deficient as to such matters.

The Court is also satisfied that the law enforcement officers acted with a reasonable, good-faith belief that they were operating lawfully pursuant to a valid warrant in searching the phone. Thus, under the circumstances of this case, the Court finds that the conduct of law enforcement was neither "sufficiently deliberate" that deterrence would be effective nor "sufficiently culpable" that deterrence would outweigh the costs of suppression, even if the search were to be deemed unconstitutional.  Accordingly, even had the Court found the search warrant for the phone to be invalid, there would be no basis to suppress any evidence seized pursuant to that warrant because the officers' reliance on its validity in executing it was objectively reasonable.

## IV.    Conclusion

The Court finds the totality of the circumstances supported a reasonable suspicion of potential danger to officers to allow for the detention and frisk/pat-down of Defendant.  The Court also finds that the arrest of Defendant was supported by probable cause given the items found in the legal search of the car and of co-defendant Barker.  Finally, the Court finds that the seizure of Defendant's Q-Link phone was lawful pursuant to his lawful arrest and/or inevitable discovery.

The Court also finds the evidence set forth in Detective Kiern's affidavit is sufficient to support a finding of probable cause that the Q-Link phone was likely to contain evidence pertinent to the case.  In considering the totality of the circumstances, including the smell of marijuana, the arrest of Barker, the known anticipated delivery of purple fentanyl from Philadelphia, and the discovery of fentanyl during the lawful search of the car, Magistrate Judge Pesto had a substantial basis for his probable cause determination.  Moreover, even if the Court were to find the search warrant invalid, suppression would not be warranted under the good-faith exception.  Accordingly,

finding no constitutional violation, Defendant's Motion to Suppress Evidence (ECF No. 53) will

be denied.  An appropriate Order follows.

DATE: *March 5, 2026*

Stephanie L. Haines
United States District Judge